UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RAYMOND CRAIG FREEMAN, | § § § § § | |
| Plaintiff, | § | |
| v. | § § | |
| DALLAS COUNTY SHERIFF LUPE VALDEZ, individually and in her official capacity, and her SUCCESSORS in Interest, individually and in their official capacities, DALLAS COUNTY, TEXAS, a county Organized under the laws of Texas, and, DSO T. BANKS #7735, Sgt. STELLA HARRIS #2510, DSO T. JOHNSON #5961, DSO J. SNOW #2531, DSO J. ARELLANO #8935, DSO SHAMIKA FRIAR, and other UNKNOWN DALLAS COUNTY CORRECTIONAL OFFICERS, Each and all individually and in their Official capacities, | § § § § § § § § § § § § § § § § § § § § | Civil Action No. 3:19-CV-00332-X |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Raymond Craig Freeman claims that a number of officers used excessive force against him and denied him the right to medical care on February 11, 2017 in the Dallas County Jail. He sued officers known, officers unknown, Sheriff

1

Lupe Valdez, and Dallas County. Before the Court are five pending, ripe motions. Officers Jonathan Arellano, Timothy Banks, and Jim Snow filed a Motion for a More Definite Statement to expound on Freeman's answer to their qualified immunity defense. [Doc. No. 26]. Sheriff Valdez, Sergeant Stella Harris, and officer Shamika Friar followed suit with their own similar Motion for a More Definite Statement to expound on Freeman's answer to their qualified immunity defense. [Doc. No. 31]. Ordinarily, the Court would grant such motions because they enable the defendants to craft motions for summary judgment based on qualified immunity that better assist the Court. But those summary judgment motions already happened here. Officers Arellano, Banks, and Snow first filed a Motion for Judgment on the Pleadings Based on Qualified Immunity [Doc. No. 47]. They then filed a Motion for Summary Judgment Based on Qualified Immunity [Doc. No. 61].[1] Sheriff Valdez, Sergeant Harris, and officer Friar also filed a Motion for Summary Judgment Based on Qualified Immunity [Doc. No. 49].[2] The Court **GRANTS** the motions for summary judgment based on qualified immunity from officers Arellano, Banks, and Snow [Doc. No. 61] and Sheriff Valdez, Sergeant Harris, and officer Friar [Doc. No. 49]. Accordingly, the Court **DISMISSES AS MOOT** the motion for judgment on the pleadings [Doc. No. 47] and the two motions for more definite statements [Docs. No. 26 and 31].

---

[1] Officers Arellano, Banks, and Snow also filed a notice of supplemental authority the Court has considered [Doc. No. 82].

[2] As permitted by the Court [Doc. No. 64], officers Arellano, Banks, and Snow filed an amended brief in support of their motion for summary judgment [Doc. No. 66] and Sergeant Harris filed an affidavit [Doc. No. 65].

2

## I. Factual Background

Freeman alleges that multiple officers beat and kicked him when he refused to enter a holdover cell, forcibly picked him up by his limbs, and placed him on the floor of the holdover cell—where he laid semi-conscious for over an hour without medical treatment. Freeman alleges that all individual defendants except Sheriff Valdez used excessive force against him and denied his right to medical care. [Doc. No. 16 at 11–14]. And Freeman alleges that Sheriff Valdez failed to train and supervise the employees of the Dallas County Sheriff's Department (the "Department"). [Doc. No. 16 at 15]. Finally, Freeman brought a *Monell* claim against Dallas County. [Doc. No. 16 at 16–17]. Unfortunately for Freeman, a great many of the events he describes were on video. They show no beating or kicking and they show that he was in the holding cell for only fifteen minutes before medical personnel arrived.[3]

## II. Legal Standards

Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] "A fact is material if it 'might affect the outcome of the suit'" and "[a] factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[5] Courts "resolve factual controversies in favor of the

---

[3] There are no pending motions regarding the County, attributable to the Court's specific scheduling order for this qualified immunity case. And there was never a summons returned executed for Defendant "T Johnson," nor was there a waiver of service as there was for all other individual defendants.

[4] FED. R. CIV. P. 56(a).

[5] *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (alteration in original) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[6] Thus, "the nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."[7]

But qualified immunity affects that typical process. The purpose of qualified immunity is to protect government officials from suit and liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[8] Thus qualified immunity "alters the usual summary judgment burden of proof."[9] Courts continue to draw all factual controversies in favor of the nonmovant, but once a government official asserts the defense of qualified immunity the burden shifts to the plaintiff to show that the defense is not available.[10] A plaintiff seeking to defeat qualified immunity must show genuine disputes of material fact about whether: 1) the official violated a statutory or constitutional right, and 2) that the right was clearly established at the time of the challenged conduct.[11] The Fourteenth Amendment's due process clause protects State-level pretrial detainees, and the Fifth, Fourth, and Eighth amendments protect incarcerated convicts, from excessive force.[12] Thus, the Court must determine whether, viewing the summary judgment

---

[6] *Antoine v. First Student, Inc.,* 713 F.3d 824, 830 (5th Cir. 2013) (citation omitted).

[7] *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (citations omitted).

[8] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[9] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

[10] *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010).

[11] *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016)

[12] *DeShaney v. Winnebago Cty. Dep't of Social Servs.*, 489 U.S. 189, 200 (1989) (Fourth Amendment); *Hudson v. McMillian*, 503 U.S. 1, 2 (1992) (Eighth Amendment); *Kingsley v. Hendrickson*, 135 S. Ct.

evidence in the light most favorable to Freeman, the individual defendants violated Freeman's constitutional right to be free from excessive force, and whether the defendants' actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.[13] This is a high hurdle because qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."[14]

### III. Application

#### A. Excessive Force

##### 1. Sheriff Valdez, Sergeant Harris, and Officer Friar

In order to prove the individual defendants used excessive force, Freeman must first prove they used force.[15] The summary judgment record establishes that Sheriff Valdez, Sergeant Harris, and officer Friar did not use any type of force against Freeman. What forms the basis of Freeman's suit is an Internal Affairs Investigation into excessive force. According to the investigation documents, when Freeman refused their orders to go to a second floor holding cell, Officers Banks and Johnson used force by applying a reverse wrist lock on Freeman. Freeman then physically resisted by dropping his weight. Freeman began kicking officers Banks and Johnson, and officers Snow and Arellano came to assist. Officer Arellano grabbed Freeman's

---

2466, 2470 (2015) (Fourteenth Amendment).

[13] *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2470 (2015).

[14] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

[15] *See Wilkins v. Gaddy*, 559 U.S. 34, 40 (2010) ("In order to prevail, Wilkins will ultimately have to prove not only that the assault actually occurred but also that it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" (citations omitted)).

5

legs to prevent him from kicking the other officers. Officers Snow and Johnson picked Freeman up by his arms, Officer Arellano picked him up by his legs, and they carried him to the second floor holding cell—where they left him on the floor. Freeman told Sergeant Harris he was assaulted, and she filed an excessive force complaint with Internal Affairs. The Internal Affairs investigation did not establish that Sheriff Valdez, Sergeant Harris, or Officer Friar were part of the use of force, nor did the hallway video show a female officer touching Freeman during the use of force incident. Freeman's response to the motion for summary judgment describes medical records in an attempt to show Freeman was denied medical attention and was too fragile to have resisted the officers. But Freeman offered no evidence to connect Sheriff Valdez, Sergeant Harris, and officer Friar to his claims of excessive force. As a result, Sheriff Valdez, Sergeant Harris, and officer Friar are entitled to qualified immunity on Freeman's excessive force claim.

### 2. Officers Banks, Snow, and Arellano

An actionable excessive force claim under the Eighth Amendment requires evidence that: "(1) the defendant acted maliciously and sadistically to cause harm by the unnecessary and wanton infliction of pain, and (2) the alleged wrongdoing was harmful enough to establish a constitutional violation."[16] "In the Fifth Circuit, to succeed on an excessive force claim, the plaintiff bears the burden of showing: '(1) an injury (2) which resulted directly and only from the use of force that was clearly

---

[16] *Hudson*, 503 U.S. at 2. Whether Freeman was a pre-trial detainee or being punished for violating probation, his conclusory response and lack of evidence would flunk both the Fourteenth Amendment test for pretrial detainees, and the Eighth Amendment test for convicted criminals.

6

excessive to the need and (3) the force used was objectively unreasonable.'"[17] The Fifth Circuit recently reaffirmed that courts "need not accept a plaintiff's version of the facts 'for purposes of [QI] when it is "blatantly contradicted" and "utterly discredited" by video recordings.'"[18]

Here, Freeman claims he wanted his surgical bandages changed after he showered and got them wet. He claims he was repeatedly rebuffed, and when he became irritated, officer Johnson told him to get into the holding cell. Freeman claims that when he asked for a supervisor, officer Johnson hit him, and other officers joined in hitting and kicking him. The video footage tells a different story. It does not show any officer kicking, beating, or otherwise physically abusing Freeman. Rather, it shows officers carrying Freeman to the holdover cell. The Court need not accept Freeman's version of events because video evidence contradicts it.[19]

In short, the evidence on which Freeman relies does not raise a genuine dispute of material fact as to whether officers Banks, Snow, and Arellano used excessive force. As such, Officers Banks, Snow, and Arellano are entitled to qualified immunity on Freeman's excessive force claim.[20]

---

[17] *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000) (*quoting Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)).

[18] *Garza v. Briones*, 943 F.3d 740, 744 (5th Cir. 2019) (*quoting Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017)).

[19] *Id.* Moreover, Freeman's unsworn declaration did not specify that officers Banks, Snow, and Arellano were the officers who used force on him.

[20] The declaration also claims Freeman needed surgical attention as a result of the incident. There are two problems with this. First, the video fails to corroborate Freeman's claims that he vomited, defecated on himself, and bleed from the mouth. Second, the Internal Affairs review indicated subsequent surgeries were due to his two previous car accidents and his pre-existing coronary artery disease. (Doc. No. 79 at 6–7).

7

## B. Medical Care

### 1. Sheriff Valdez, Sergeant Harris, and Officer Friar

Freeman had a constitutional right, under the due process clause of the Fourteenth Amendment, not to have his serious medical needs met with deliberate indifference.[21] Sheriff Valdez, Sergeant Harris, and officer Friar's motion for summary judgment included specific evidence that they had no part in determining what medical care Freeman was to have or in obstructing that care in any way. Freeman's response to the motion for summary judgment generally postulates that "Plaintiff's Unsworn Declaration shows that he was denied medical attention." And after roughly summarizing the voluminous medical records attached to the response, Freeman's brief then states that he was beaten after he requested that his surgical wound bandages be changed, the beating required surgical intervention, he was left to lie on the floor of the holding cell instead of being given medical care, and he received medical care only after other inmates called for help. Freeman's response points to no evidence that Sheriff Valdez, Sergeant Harris, or officer Friar were personally involved in any decisions regarding his medical care or the prevention of any medical care. Additionally, Freeman's unsworn declaration never shows that Sheriff Valdez, Sergeant Harris, or officer Friar took any affirmative steps to delay him from receiving treatment or that they were aware of any risks to Freeman if he did not receive treatment. At most, there is an issue of a fifteen-minute delay in

---

[21] *Thompson v. Upshur Cty.*, 245 F.3d 447, 457 (5th Cir. 2001). The appropriate standard to apply depends upon whether Freeman complains of a condition of confinement or an episodic act or omission. *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc). But both types of claims require Freeman to show that the defendants acted with deliberate indifference to his medical needs. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 646 (5th Cir. 1996). He fails to raise a genuine dispute on that element.

medical care. But a delay in providing medical care is only a constitutional violation if it is caused by the deliberate indifference of governmental officials and results in substantial harm.[22] Freeman has adduced no evidence of substantial harm due to delay.[23]

In sum, Freeman has failed to raise a genuine dispute of material fact on his medical care claim against Sheriff Valdez, Sergeant Harris, and officer Friar, and they are entitled to qualified immunity as to Freeman's medical care claim.[24]

### 2. Officers Banks, Snow, and Arellano

Likewise, Freeman has adduced no evidence of harm due to delay with regard to officers Banks, Snow, and Arellano. The undisputed evidence confirmed by video footage shows a fifteen-minute period from his placement in the holdover cell to the arrival of medical personnel. Yet Freeman has put forth no evidence of substantial harm that this fifteen-minute period caused him.[25] Likewise, Freeman's response and unsworn declaration nowhere indicate that officers Banks, Snow, or Arellano were subjectively aware of the risk of substantial harm to Freeman or consciously

---

[22] *Baughman v. Hickman*, 935 F.3d 302, 309 (5th Cir. 2019); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

[23] To the extent a doctor could decipher the recitations of medical conditions and treatments in Freeman's response, the Court has no duty to search the record for evidence of genuine issues. Instead, Freeman must specifically identify the evidence in the record and tell the Court exactly how that evidence supports his assertions. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). He has failed to do so.

[24] Additionally as to Sheriff Valdez, Freeman did not put forth evidence that she acted with deliberate indifference in enacting policies that caused the jail or any officers to deprive Freeman of reasonable medical care. *See Rhyne v. Henderson Cty.*, 973 F.3d 386, 392 (5th Cir. 1992).

[25] Yes, Freeman makes a conclusory assertion he had surgery due to the alleged excessive force. But the Internal Affairs materials show this was due to his two prior car accidents and his coronary artery disease. Even assuming the surgery was due to the alleged excessive force, Freeman puts forth no evidence that the fifteen-minute period he was in the holding cell before seeing medical personnel caused substantial harm.

9

disregarded that risk.[26]  Because Freeman offers no evidence of deliberate indifference or substantial harm from delay, he fails to overcome the qualified immunity defense of Officers Banks, Snow, and Arellano whether his claim is under an "episodic acts or omissions" theory or a "condition of confinement" theory.[27]

## C. Failure to Train or Supervise

### 1. Sheriff Valdez, Sergeant Harris, and Officer Friar

To prevail upon a failure to train or supervise claim, Freeman must establish: 1) Sheriff Valdez failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of Freeman's rights; and 3) the failure to train or supervise constituted deliberate indifference to the Freeman's constitutional rights.[28]  Deliberate indifference requires a pattern of similar constitutional deprivations—one such deprivation won't suffice.[29]

Freeman's response states in conclusory fashion that "a material issue of fact exists as to whether Sheriff Valdez properly trained her employees" and claims that that Sheriff Valdez did not take reasonable measures to guarantee the safety of the inmates at the jail.  [Doc. No. 71 at 13–14, 17].  But there is no evidentiary support for this bald assertion of failure to train, and there is not even a bald assertion as to failure to supervise.  This is also true of Freeman's unsworn declaration, which never names Sheriff Valdez.  [Doc. No. 78-2].  And there is no evidence regarding Sergeant

---

[26] *Hare*, 74 F.3d at 646.

[27] *Id.*  The "condition of confinement" theory would also require Freeman to prove Officers Banks, Snow, and Arellano were policy-making employees of the Department or had a legal duty or responsibility to provide medical care to inmates.  *Scott*, 114 F.3d at 53.  Freeman has failed to do so.

[28] *Upshur Cty.*, 245 F.3d at 459.

[29] *Id.*

10

Harris or officer Friar regarding any failure to train or supervise. Accordingly, Sheriff Valdez, Sergeant Harris, and officer Friar are entitled to qualified immunity as to Freeman's claim for failure to train or supervise.

### 2. Officers Banks, Snow, and Arellano

It is unclear if Freeman intended his failure to train and supervise claim to be against individuals other than Sheriff Valdez. If he intended to bring the claim against officers Banks, Snow, and Arellano, he has failed to adduce any evidence that these officers had duties to train and supervise and breached those duties. Even if Freeman did not abandon the claim, he nonetheless has failed to overcome officers Banks, Snow, and Arellano's qualified immunity defense as to the failure to train and supervise claim.

## IV. Conclusion

Accordingly, the Court **GRANTS** the motion for summary judgment based on qualified immunity from Sheriff Valdez, Sergeant Harris, and officer Friar. [Doc. No. 49]. The Court also **GRANTS** the motion for summary judgment based on qualified immunity from officers Arellano, Banks, and Snow [Doc. No. 61]. As a result, the Court **DISMISSES AS MOOT** the motion for judgment on the pleadings [Doc. No. 47] and the two motions for more definite statements as to Freeman's response to the individual defendants' qualified immunity defense [Doc. Nos. 26 and 31].[30]

---

[30] Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

**IT IS SO ORDERED** this 6th day of February, 2020.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE